Harry Kresky
(Admitted to practice in New York
and local U.S. District Courts with
application for admission pro hac vice
to this Court to be filed when local
counsel is retained)
250 W. 57th Street (Ste. 2017)
New York, NY 10107
NY ID# 1464650
(212) 581-1516

IN THE DISTRICT COURT OF
THE MIDDLE DISTRICT OF PENNSYLVANIA

-------------------------------------------------------X

| | |
|---|---|
| RITTENHOUSE ENTERTAINMENT, INC., THE MINES, INC., G NET COMM. CO., PHOENIX ESTATES, and THOMAS J. GRECO, | No.: JURY TRIAL DEMANDED |
| Plaintiffs, | **COMPLAINT** |
| vs. | |
| CITY OF WILKES-BARRE, THOMAS LEIGHTON, individually and as Mayor of Wilkes-Barre, GERALD DESSOYE, individually and as Chief of Police of Wilkes-Barre, J.J. MURPHY, individually and as City Administrator of Wilkes-Barre, TONY THOMAS, JR., KATHY KANE, WILLIAM BARRETT, RICK CRONAUER, MICHAEL MERRITT, individually and as Members of the Wilkes-Barre City Council, BUTCH FRATI, individually and as Director of Operations of Wilkes-Barre, LUZERNE COUNTY , MICHAEL SAVOKINAS, individually and as Luzerne County Sheriff, KING'S COLLEGE, FATHER THOMAS J. O'HARA, ROBERT McGONIGLE, PAUL LINDENMUTH  and JOHN McANDREW, individually and as Officers and Employees of Kings College, | |
| Defendants. | |

-------------------------------------------------------X

Plaintiffs, by and through Harry Kresky, an attorney admitted to practice in the State of New York and local U.S. District Courts, with application for admission pro hac vice to this Court to be filed when local counsel is retained, complaining of defendants, allege:

## PARTIES

1. Plaintiff Rittenhouse Entertainment, Inc. (hereinafter "Rittenhouse") is a corporation chartered under the laws of the State of Pennsylvania which leases and owns improvements in a nightclub/bar known as the Mines, at Greco Building 101-105 North Main Street, lower level, in the City of Wilkes-Barre, Pennsylvania, since October, 2008.

2. Plaintiff The Mines, Inc., is a corporation chartered under the laws of the State of Pennsylvania which subleases and operates a nightclub/bar known as The Mines.

3. Plaintiff Thomas J. Greco is an officer, director and principal of Rittenhouse, Inc. and The Mines, Inc., and is owner of the real property where The Mines is located.

4. Plaintiff G Net Comm. Co, Inc. is a corporation chartered under the laws of the State of Pennsylvania, and is and at all pertinent times was the owner of real property located at 135 N. Washington St. and right of ways under the streets within a twenty block grid in the City of Wilkes-Barre. Plaintiff Greco is a principal.

5. Plaintiff Phoenix Estates is a partnership and is and at all pertinent times was the owner of real property at 89 N. Washington St. in the City of Wilkes-Barre. Plaintiff Greco is a principal.

6. Defendant City of Wilkes-Barre (hereinafter "the City" or "Wilkes-Barre") is a municipality in the State of Pennsylvania, County of Luzerne.

7. Defendant Thomas Leighton is and at all pertinent times was the Mayor of the City of Wilkes-Barre.

8. Defendant Gerry Dessoye is and at all pertinent times was the Chief of Police of the City of Wilkes-Barre.

9. Defendant J. J. Murphy is and at all pertinent times was City Administrator of the City of Wilkes-Barre.

10. Defendants Tony Thomas Jr., Kathy Kane, William Barrett, Rick Cronauer, and Michael Merritt are and at all pertinent times were Members of the City Council of the City of Wilkes-Barre.

11. Defendant Butch Frati is and at all pertinent times was the Director of Operations of the City of Wilkes-Barre.

12. Defendant Luzerne County is a political subdivision of the State of Pennsylvania and the employer of defendant Savokinas.

13. Defendant Michael Savokinas at all pertinent times was the Sheriff of Luzerne County.

14. Defendant King's College is a corporation chartered under the laws of the State of Pennsylvania which operates an educational institution across the street from The Mines.

15. Defendant Father Thomas J. O'Hara is and at all pertinent times was the President of King's College.

16. Defendant Robert McGonigle is and at all pertinent times was Associate Vice President for Student Affairs and Dean of Students at King's College.

17. Defendant Paul Lindenmuth is and at all pertinent times was Chair of the Department of Criminal Justice and Sociology at King's College.

18. Defendant John McAndrew is and at all pertinent times was Dean of Students for King's College.

## JURISDICTION

19. Jurisdiction is asserted pursuant to 28 U.S.C Secs. 1331 and 1343.

20. Jurisdiction over state law claims is asserted pursuant to 28 U.S.C. Sec. 1367.

## FACTS

21. Plaintiffs The Mines, Inc. and Thomas J. Greco have owned and operated The Mines, a nightclub/bar across the street from King's College.

22. At all times pertinent hereto, The Mines was open from Thursday through Saturday evenings from 5 p.m. to 2 a.m. until on or about April 23, 2009 when business dropped due to the actions of defendants complained of herein.

23. The Mines currently opens about once every 10 days to maintain its liquor license which includes sporadic private parties.

24. Plaintiffs Greco, The Mines, Inc. and Rittenhouse strictly adhered to the current Uniform Construction Code prior to being granted permission and the proper permits to open by the City, installing at their great expense fire sprinklers, emergency exiting, emergency lighting, emergency alarms, kitchen, bathrooms and electrical work.

25. At all times pertinent hereto plaintiff The Mines, Inc. has held a license to serve alcoholic beverages issued by the Pennsylvania Liquor Control Board (hereinafter the "PLCB").

26. The persons served at The Mines have been 30% - 40% Black and Latino; including King's College minority students.

27. On information and belief, the Black and Latino population of Wilkes-Barre has increased during the last several years.

28. However, Wilkes-Barre, Luzerne County and King's College remain predominately White.

29. Said plaintiffs have always welcomed people of any race, color or creed at The Mines.

30. Until the events giving rise to this action, said plaintiffs have operated The Mines with no PLCB citation and no legal or law enforcement action against it by the City of any kind.

31. Said plaintiffs have at all times enforced a strict dress code, screening by metal detectors, identification scanner with digital back-up and strict identification policy, in order for patrons to gain admission to the club.

32. Other bars in close proximity to The Mines with a much lower percentage of Black and Latino clientele (between 1 and 5 percent), have had numerous incidents of crime, noise and other disturbances, including PLCB citations and liquor license renewal issues.

33. The Mines has had an extremely limited number of incidents or disturbances, less than usual for a nightclub/bar where large crowds congregate.

34. Defendants City, Leighton, Dessoye and Murphy have come under increasing public criticism and scrutiny for failing to provide adequate policing and law

enforcement in the City of Wilkes-Barre, due to an upsurge in violent crimes in the last few years, and especially since on or about January 1, 2009.

35. On information and belief, on or about April 5, 2009 an email from defendant McGonigle, with defendant McAndrews' involvement, was circulated by defendant King's College to their students alleging "problems" with The Mines, and inviting students to a forum to discuss how to file complaints with the PLCB against The Mines.

36. At the suggestion of defendants Murphy and Dessoye, plaintiff Greco subsequently spoke with defendant Dessoye and was advised that the clientele of The Mines was not a "good mix" with King's College and that The Mines attracted the "wrong crowd."

37. Plaintiff Greco explained that recent criminal incidents near King's College were not from his customers, were near other bars in the area, or occurred on nights that The Mines was closed.

38. On or about April 8, 2009 plaintiff Greco met with King's College staff and Father O'Hara.

39. At said meeting, defendant O'Hara told plaintiff Greco that he was under pressure from parents of students at King's College threatening to take their children out of the college unless some action was taken against The Mines, or it was closed down, and that the was meeting with defendant Leighton and defendant Dessoye regarding the perceived problems at The Mines.

40. Plaintiff Greco was advised by defendant O'Hara that the clientele of The Mines was not a "good mix" with King's College and that The Mines attracted the "wrong crowd."

41. Defendant Lindenmuth falsely, and with knowledge of its falsity or with reckless disregard of the truth or falsity, told Kings College students and staff that the Mines was the scene of drug busts and had lost its licenses.

42. Commencing on or about April 16, 2009, defendant City and its police began a campaign of harassing Black and Latino individuals coming and going from The Mines and embellishing and creating police reports to make it appear as if criminal incidents were occurring at The Mines or its property.

43. Defendant City and its police did not undertake these or other law enforcement actions at other bars in the area with a white clientele despite there being significantly more incidents of a criminal and nuisance nature there.

44. Defendant O'Hara subsequently advised plaintiff Greco that King's College would try to shut down The Mines because The Mines had the "wrong crowd".

45. On information and belief, defendants Leighton and Dessoye subsequently met with defendant O'Hara to discuss The Mines.

46. The following weekend, at the direction of defendants City, Leighton and Dessoye, beginning on or about April 23, 2009, six (6) police cruisers and fifteen (15) policemen including a K-9 drug dog camped out for hours on and about The Mines property.

47. City police stood in the driveways of The Mines' parking lots, as well as down the block, harassing, targeting and arresting persons who sought entrance to The Mines and writing up the incidents to make it appear that they occurred at The Mines.

48. Additionally, as part of this campaign, Black and Latino patrons from The Mines were targeted, harassed and in one case, upon information and belief, was beaten up by the police.

49. The Mines' manager was advised by the police that "we are closing your boss's place down".

50. City police also conducted breathalizer blood alcohol tests of customers leaving The Mines and had a police dog approaching customers going in or out of The Mines.

51. On information and belief, no such action and no law enforcement action was taken regarding the other bars in the immediate area with a predominately white clientele, including, but not limited, to Senunas', Gonda's or Beer Boys, the Hardware Bar, and Liam's.

52. These bars, unlike The Mines, regularly had criminal and violent incidents at them as well as numerous PLCB citations.

53. The following weekend, beginning on or about April 30, 2009, the targeting and harassing escalated even further, with about thirty (30) enforcement officers camping out outside The Mines, including, besides City personnel, eight (8) Luzerne County Sheriffs' deputies with four (4) vehicles including defendant Savokinas, three (3) Pennsylvania State Police Liquor Control Enforcement agents, a Wilkes-Barre SWAT team with SWAT vehicle in full SWAT gear, eight (8) Wilkes-Barre Police vehicles as

well as a motorcycle police officer and two (2) K-9 dogs, totaling about twenty (20) Wilkes-Barre City Police Officers and a total of about thirty (30) enforcement officers.

54. Despite this unprecedented enforcement presence, no arrests were made and no citations issues; the law enforcement presence was, on information and belief, designed to and had the effect of targeting and harassing plaintiffs and prospective patrons of The Mines.

55. On or about May 15 and 16, 2009 City Police set up seatbelt check points in front of The Mines for an unprecedented two consecutive nights, with the intent to target and harass The Mines and its customers.

56. On information and belief, neither from April 23, 2009 through June 4, 2009, nor at times before and after, were similar actions or, indeed, any significant law enforcement action directed towards Senunas', Gonda's or Beer Boys, the Hardware Bar, and Liam's or their customers or employees despite there being criminal and other violent actions there as well as violations under the regulations of PLCB.

57. At all times pertinent hereto, on information and belief, no such action and no law enforcement action was taken regarding the other bars in the immediate area with a predominately white clientele, including, but not limited to, Senunas', Gonda's or Beer Boys, the Hardware Bar, and Liam's.

58. On information and belief, these bars, unlike The Mines, regularly had criminal and violent incidents at them as well as numerous PLCB citations.

59. The aforesaid actions of defendants were taken pursuant to a custom and policy of defendants City and Luzerne County.

60. Defendants King's College, O'Hara, McGonigle, Lindenmuth and McAndrew acted in concert with the other defendants at all pertinent times, and all defendants named in this complaint acted under the color of state law and willfully participated in a joint conspiracy to shut down The Mines and otherwise damage plaintiffs in derogation of their constitutional rights.

61. The aforesaid custom and policy consists of an effort to discourage businesses in Wilkes-Barre and Luzerne County from serving Blacks and Latinos and scape-goating such businesses for the City and County defendants, and the defendants employed by them for failing to adequately police the City and maintaining proper law enforcement.

62. On information and belief, in furtherance of this custom and policy, defendant City has previously moved to close down bars and restaurants that serve Black and Latino clientele, including, but not limited to Airey Tavern, Chu's, Desi's Pizza, Gordie's, Tom & Eva's, and the Whitehouse.

63. This effort is in furtherance of an official policy and goal of the City/County defendants of preventing Black and Latino people from living in or spending time in Wilkes-Barre and Luzerne County.

64. As a result of the aforesaid, the investment of over $900,000.00 in the development of the nightclub-restaurant-museum, the income and income prospects of plaintiffs Rittenhouse, Greco and The Mines, Inc. have been, continue, and will continue to be severely damaged in an amount to be determined at trial.

65. In addition there has been damage in amounts to be determined at trial to plaintiff Greco's reputation.

66. Real property owned by plaintiffs G Net Comm. Co, Inc. and Phoenix Estates in the City has been under consideration by defendants City and Leighton for tax and other benefits to encourage development under the Keystone Opportunity Zone (hereinafter "KOZ") program.

67. Said plaintiffs along with plaintiff Greco have invested in excess of $2,900,000.00 in furtherance of developing said properties as an advanced broadband economic development project and community green energy geothermal district heating and cooling authority for the benefit of residents and all property owners within the downtown Wilkes-Barre area.

68. Said plaintiffs along with plaintiff Greco worked on a Pennsylvania State government bill to insert funding for geothermal projects which use abandoned mine water as a source for green energy development for geothermal heating and cooling with grants available for the feasibility and implementation of the project.

69. After gaining local representative Eddie Day Pashinski's support as well as support from Governor Rendell, said plaintiffs urged defendant City to apply for grant funds.

70. Said plaintiffs were prime candidates for said grant funds.

71. On information and belief, defendants Leighton, Dessoye, Frati in November and December of 2009 caused Representative Pashinski to no longer support the geothermal project and not return plaintiff's calls.

72. Said defendants took said action after Agent Joseph Noone of the Federal Bureau of Investigation leaked that he had interviewed Greco in November, 2009, and would move forward to convict Greco of a felony.

73. In retaliation for plaintiff Greco's involvement with The Mines and his assertion of his right to conduct a lawful business at and through The Mines including his complaints about violations of his civil rights, defendants City, Leighton, Thomas Jr., Kathy Kane, William Barrett, Rick Cronauer, and Michael Merritt have obstructed granting of benefits under the KOZ project to plaintiffs G Net Comm. Co, Inc. and Phoenix Estates.

74. Specifically, said defendants failed to include real property owned by plaintiffs G Net Comm. Co, Inc. and Phoenix Estates among those properties for which an extension to begin physical on site development work was granted on or about June, 2, 2010.

75. The property owned by said plaintiffs was in all respects qualified for an extension.

76. As a result thereof the benefits have been lost and the development possibilities significantly lessened, resulting in said plaintiffs being damaged in an amount to be determined at trial.

77. The aforesaid actions of the individual defendants were willful, malicious and beyond all bounds of civilized behavior.

78. Plaintiffs demand a trial by jury.

## COUNT ONE

79. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 78 as if fully set forth herein.

80. Plaintiffs Rittenhouse, Greco and The Mines, Inc. state a claim against defendants under 42 U.S.C. Sections 1983 and 1985 for acting in concert to subject

plaintiffs and their businesses to far harsher law enforcement action than other businesses similarly situated (other than in the race of their clientele) in violation of said plaintiffs' right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

## COUNT TWO

81. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 80 as if fully set forth herein.

82. Plaintiffs Rittenhouse, Greco and The Mines, Inc. state a claim against defendants, acting in concert, under 42 U.S.C. Section 1981, 1982, 1983, and 1985 and the Fourteenth Amendment to the United States Constitution, inasmuch as defendants actions were done in retaliation against plaintiffs for welcoming Black and Latino persons as patrons at their establishment and were done as part of a custom and policy designed to drive such persons out of Wilkes-Barre and the neighboring communities.

## COUNT THREE

83. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 82 as if fully set forth herein.

84. Plaintiffs Rittenhouse, Greco and The Mines, Inc. state a claim against defendants under the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution inasmuch as (a) defendants have perverted and abused the police powers invested in them and defendants King's College, O'Hara, McGonigle, Lindenmuth and McAndrew have acted in concert with them for the purpose of destroying plaintiffs and their business without legally valid justification; (b) have acted so as to stigmatize and harass plaintiffs without any lawful basis and without due regard

to the truth of statements made about plaintiffs; and (c) have acted to wrongfully deprive plaintiffs of the use of their property and their right to pursue their legitimate commercial endeavors, as contractually sanctioned and approved by the City at substantial cost to plaintiffs.

## COUNT FOUR

85. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 84 as if fully set forth herein.

86. Plaintiff Greco, G Net Comm. Co, Phoenix Estates, and Greco Holdings, Inc. state a claim under 42 U.S.C. Sec. 1983 against defendants City, Leighton, Thomas, Jr., Kane, Barrett, Cronauer and Merritt for violation of their rights to equal protection of the laws and substantive due process under the Fifth and Fourteenth Amendments of the U.S. Constitution for actions taken against them under color of state law in conjunction with the KOZ development project.

## COUNT FIVE

87. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 86 as if fully set forth herein.

88. Plaintiffs state the following state law claims against all defendants acting in concert for abuse of process: tortuous interference with business relationships, trade disparagement, defamation.

## COUNT SIX

89. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 88 as if fully set forth herein.

90.     Plaintiffs Rittenhouse, Greco, and The Mines, Inc. state a claim against defendants King's College, O'Hara, McGonigle, Lindenmuth and McAndrew under 24 PS.§ 5004(a)(3) for depriving minority students of their choice in where to socialize.

### COUNT SEVEN

91.     Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 90 as if fully set forth herein.

92.     On information and belief defendants Leighton and Dessoye induced fellow King's College graduate, friend and Federal Bureau of Investigation agent, Joseph Noone, to manipulate plaintiff Greco into becoming vulnerable to the charge of misprision (a/k/a failing to report a felony).

93.     Said defendants did so in retaliation against plaintiff Greco for complaining of and threatening to sue for civil rights violations stemming from their actions and activities at The Mines and to undermine his credibility.

94.     As a result of the efforts of Agent Noone, plaintiff Greco was convicted (upon a plea of guilty) of the felony of misprison (18 U.S.C. Sec. 4) on or about November 10, 2010 and sentenced to two years probation and 50 hours of community service and fined $10,000.

95.     Plaintiff Greco states a claim against defendants under 42 U.S.C. Section 1981, 1982, 1983, and 1985 and the Fifth and Fourteenth Amendments to the U.S. Constitution.

### COUNT EIGHT

96.     Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 95 as if fully set forth herein.

97.     Plaintiffs state a claim for attorneys fees under 42 U.S.C. § 1988.

WHEREFORE, plaintiffs pray for a judgment:

A.      Awarding plaintiffs Rittenhouse, Greco and The Mines, Inc. compensatory damages including prospective loss of earnings in an amount to be determined at trial on each cause of action against all defendants on the First, Second, Third and Fifth counts.

B.      Awarding plaintiff Greco, G Net Comm. Co, Phoenix Estates, and Greco Holdings, Inc. compensatory damages, including loss of prospective earnings, in an amount to be determined at trial against defendants City, Leighton, Thomas, Jr., Kane, Barrett, Cronauer and Merritt on the Fourth Count.

C.      Awarding plaintiffs Rittenhouse, Greco, and The Mines, Inc. compensatory damages in an amount to be awarded at trial against defendants Kings' College, O'Hara, McGonigle, Lindenmuth and McAndrew on the Sixth count.

D.      Awarding plaintiff Greco compensatory damages in an amount to be determined at trial against defendants Leighton and Dessoye on the Seventh Count.

E.      Awarding plaintiffs punitive damages in an amount to be determined at trial against the individual defendants.

F.      Awarding plaintiffs costs, disbursements and reasonable attorney's fees together with such other and further relief as this Court deems just and proper.

Dated: New York, NY
       April 4, 2011

/s/
_____
Harry Kresky
250 W. 57th Street (Ste. 2017)
New York, NY 10107
(212) 581-1516
Em: hkresky@harrykreskylaw.com