**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RITTENHOUSE ENTERTAINMENT, INC.; THE MINES, INC.; G NET COMM. CO.; PHOENIX ESTATES; and THOMAS J. GRECO; | CIVIL ACTION NO. 3:11-CV-617 |
| Plaintiffs, | (JUDGE CAPUTO) |
| v. | |
| CITY OF WILKES-BARRE; THOMAS LEIGHTON, *individually and as Mayor of Wilkes-Barre*; GERALD DESSOYE, *individually and as Chief of Police of Wilkes-Barre*; J.J. MURPHY, *individually and as City Administrator of Wilkes-Barre*; TONY THOMAS, JR., KATHY KANE, WILLIAM BARRET, RICK CRONAUER, and MICHAEL MERRITT, *individually and as Members of the Wilkes-Barre City Council*; BUTCH FRATI, *individually and as Director of Operations of Wilkes-Barre*; LUZERNE COUNTY; MICHAEL SAVOKINAS, *individually and as Luzerne County Sheriff*; KING'S COLLEGE; and FATHER THOMAS J. O'HARA, ROBERT MCGONIGLE, PAUL LINDENMUTH, and JOHN MCANDREW, *individually and as Officers and Employees of Kings College*; | |
| Defendants. | |

## MEMORANDUM

Plaintiffs bring this suit alleging violations of the Fifth and Fourteenth Amendments and Pennsylvania law, as well as several state tort claims. Three sets of Defendants move to dismiss: the "City Defendants" (the City of Wilkes-Barre, Thomas Leighton, Gerald Dessoye, J.J. Murphy, Tony Thomas Jr., Kathy Kane, William Barrett, Rick Cronauer, Michael Merritt, and Butch Frati); the "College Defendants" (King's College, Father Thomas

O'Hara, Robert McGonigle, Paul Lindenmuth, and John McAndrew); and the "County Defendants" (Luzerne County and Michael Savokinas). Because Plaintiffs fail to properly state several claims, Defendants' motions will be granted in part. But because Plaintiffs have properly pleaded other claims, Defendants' motions will be denied in part.

## I. Background

The facts as alleged in the Plaintiffs' complaint are as follows:

### A. The Mines Nightclub

Plaintiff Thomas Greco is an officer, director, and principal of two of the Plaintiff Corporations: The Mines, Inc. and Rittenhouse Entertainment, Inc. (collectively, the "Entertainment Corporations"). Mr. Greco and the Entertainment Corporations own and operate a nightclub and bar called The Mines, located across the street from Defendant King's College in Wilkes-Barre, Pennsylvania. Mr. Greco owns the real property where The Mines is located. Mr. Greco and the Entertainment Corporations invested over $900,000 in the development of The Mines.

In early 2009, The Mines was open from Thursday through Saturday evenings from 5:00 p.m. until 2:00 a.m. The nightclub's patrons were 30-40% black and Latino, including minority students from King's College. The Mines enforced a strict dress code and identification policy, and it used metal detectors and an identification scanner with digital back-up. It had an extremely limited number of disturbances–fewer than typical for a nightclub.

### B. Concern from the City of Wilkes-Barre and King's College

At the beginning of January, 2009, Defendants the City of Wilkes-Barre, its Mayor Thomas Leighton, its Chief of Police Gerald Dessoye, and its City Administrator J.J. Murphy

2

all faced increasing public criticism and scrutiny. There had been an upsurge in violent crimes, and the public was concerned that these Defendants were failing to provide adequate law enforcement.

Mr. Murphy and Chief Dessoye suggested that Mr. Greco speak with Chief Dessoye about The Mines. During that conversation, Chief Dessoye stated that The Mines was not a "good mix" with King's College and that it attracted "the wrong crowd." Mr. Greco advised the Chief that recent criminal incidents near the college did not involve nightclub customers, were near other bars in the area, or occurred on nights when the nightclub was closed.

Defendant Robert McGonigle, the Associate Vice President for Student Affairs at King's College, with the assistance of Defendant John McAndrew, the college's Dean of Students, sent an e-mail to the students at King's College on about April 5, 2009. The e-mail alleged that there were problems with the Mines and invited students to a forum to discuss how to file complaints with the Pennsylvania Liquor Control Board ("PLCB") against the nightclub. On about April 8, 2009, Mr. Greco met with Defendant Father Thomas J. O'Hara, who is President of King's College, and other King's College staff. Father O'Hara advised Mr. Greco that he was under pressure from parents of students at King's College who were threatening to remove their students from the college unless there was action taken against the Mines or it was shut down. Father O'Hara also said that the clientele at The Mines was not a "good mix" with the college and that the nightclub attracted "the wrong crowd." Defendant Paul Lindenmuth, the Chair of the Department of Criminal Justice and Sociology at King's College, falsely told students and staff that there had been drug busts at The Mines and that the nightclub had lost its licenses.

**C. The Campaign of Harassment**

Starting on about April 16, 2009, the City of Wilkes-Barre and Luzerne County began a campaign of harassment against the black and Latino patrons of The Mines. The College Defendants acted in concert with the City and County in order to shut down The Mines and cause damage to Mr. Greco and the Entertainment Corporations.  The City began the harassment by creating and embellishing police reports to make it appear as if criminal incidents were occurring on Mr. Greco's nightclub property. After the harassment began, Father O'Hara told Mr. Greco that King's College would try to shut down The Mines because it had "the wrong crowd." Father O'Hara then met with Mayor Leighton and Chief Dessoye to discuss The Mines.

The following weekend, on about April 23, 2009, six police cruisers and fifteen policemen (including a K-9 drug dog) stationed themselves at the nightclub property for hours. The officers stood in the driveways of the nightclub's parking lots and down the block from the nightclub, harassing and arresting people who attempted to enter The Mines. They conducted breathalizer blood alcohol tests of patrons leaving The Mines and had the drug dog approach people coming or going from the nightclub.  In one instance, the police beat up a patron. The police told the nightclub's manager, "We are closing your boss's place down."

The harassment escalated a week later around April 30, 2009. There were thirty law enforcement officers outside The Mines. This included Defendant Luzerne County Sheriff Michael Savokinas, eight Sheriff's deputies from Defendant Luzerne County, four vehicles, three Pennsylvania State Liquor Control Enforcement agents, a Wilkes-Barre SWAT team, eight Wilkes-Barre police vehicles, a motorcycle police officer, and two K-9 dogs. The

officers did not arrest anyone or issue any citations. The law enforcement presence was merely for the purposes of targeting and harassing Mr. Greco, the Entertainment Corporations, and prospective patrons of The Mines. Then on about May 15 and 16, 2009, Wilkes-Barre police set up seatbelt check points in front of The Mines for two nights.

Prior to this police harassment, the Mines had never received a citation from the PLCB or had any legal or law enforcement action against it.  Other bars in the area whose patrons were 95-99% white had numerous incidents of crime, violence, noise, PLCB citations, and liquor license removals. The City and its police did not undertake similar law enforcement actions against the bars with predominantly white clientele.

All this police activity was pursuant to a custom or policy of the City and the County to discourage businesses in Wilkes-Barre and Luzerne County from serving black and Latino patrons, to use those businesses as scapegoats for the City's and County's law enforcement failures, and to prevent black and Latino people from living in or spending time in the City and the County. The City has previously taken action to close down several other bars and restaurants that served black and Latino clientele.

Because of the police crackdown, there was a decline in business at the Mines. Currently, the nightclub opens approximately once every ten days in order to maintain its liquor license. Mr. Greco and the Entertainment Corporations have lost significant income and income prospects. Mr. Greco has also suffered damage to his reputation.

## D. Felony Charges Against Mr. Greco

Mayor Leighton and Chief Dessoye induced FBI Agent Joseph Noone to manipulate Mr. Greco into becoming vulnerable to the charge of misprision. Mayor Leighton and Chief Dessoye were friends of Agent Noone and like him, were alumni of King's College. They

5

acted in retaliation against Mr. Greco for threatening a civil rights lawsuit against the City based on the police harassment at The Mines. As a result of Agent Noone's efforts, Mr. Greco pled guilty to misprision on about November 10, 2010. He was sentenced to two years probation and fifty hours of community service and was fined $10,000.

## E. Denial of Tax Benefits

Mr. Greco is also a principal of the two other Plaintiff corporations: G Net Comm. Co. and Phoenix Estates (the "Development Corporations"). G Net and Phoenix own real estate in the City of Wilkes-Barre. The City and Mayor Leighton had been considering providing tax and other benefits to the Development Corporations as part of the Keystone Opportunity Zone ("KOZ") program.

Mr. Greco, G Net, and Phoenix invested over $2,900,000 to develop the companies' properties as an advanced broadband economic development project and community green energy geothermal district heating and cooling authority. They had worked on a Pennsylvania bill creating funding grants for geothermal projects using abandoned mine water as a source for green energy. Local Representative Eddie Day Pashinski and Governor Rendell both supported Mr. Greco and the Development Corporations. Because G Net and Phoenix were prime candidates for funding under the bill, Mr. Greco and the Development Corporations urged the City to apply for the grant.

In November and December of 2009, Mayor Leighton, Chief Dessoye and Defendant Butch Frati, who is the City's Director of Operations, convinced Representative Pashinski that he should not support the geothermal project or return phone calls to Mr. Greco, G Net, and Phoenix. This occurred after those Defendants had learned that Mr. Greco was facing charges for a felony. Further, the Mayor Leighton, Chief Dessoye, and members of the

6

Wilkes-Barre City Council (Defendants Tony Thomas, Jr., Kathy Kane, William Barrett, Rick Cronauer, and Michael Merritt) obstructed the granting of KOZ tax benefits to G Net and Phoenix.  Specifically, these Defendants failed to grant a site development work extension to the Development Corporations' property, even though the property qualified for an extension and the Defendants granted it to other properties. These Defendants took this action in retaliation for Mr. Greco's involvement with The Mines and his complaints about civil rights violations. Because of the loss of the tax benefits, Mr. Greco and the Development Corporations have incurred financial damage.

**F. Litigation**

The Plaintiffs filed the instant action on April 4, 2011. The complaint contains eight counts. In Count I, Mr. Greco and the Entertainment Corporations assert claims under 42 U.S.C. §§ 1983 and 1985 against all Defendants for a violation of the Equal Protection Clause. In Count II, Mr. Greco and the Entertainment Corporations assert claims under 42 U.S.C. §§ 1981, 1982, 1983, and 1985 against all Defendants, alleging retaliation and a conspiracy. In Count III, Mr. Greco and the Entertainment Corporations assert a claim under the Due Process Clause against all Defendants. In Count IV, Mr. Greco and the Development Corporations assert a § 1983 claim against the City, Mayor Leighton, and the City Council member Defendants, alleging a violation of the Equal Protection Clause and substantive Due Process. In Count V, all Plaintiffs assert state tort claims against all Defendants, alleging tortious interference with business relationships, trade disparagement, and defamation. In Count VI, Mr. Greco and the Entertainment Corporations assert a violation of 234 P.S. § 5004(a)(3) against the College Defendants. In Count VII, Mr. Greco asserts claims under §§ 1981, 1982, 1983, and 1985 against Mayor Leighton and Chief

Dessoye, alleging retaliation. Finally, in Count VIII, Plaintiffs seek attorneys fees under 42 U.S.C. § 1988.

The City Defendants and the College Defendants each filed motions to dismiss on June 6, 2011. The County Defendants moved to dismiss on June 15, 2011. The motions have been fully briefed and are ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The pleading standard of Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," but "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1959 (2009) (quoting *Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

Thus, when determining the sufficiency of a complaint, a court must undertake a three-part inquiry. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The inquiry involves: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the

complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.*

### III. Discussion

**A. Defendants Murphy and Frati**

As an initial matter, the City Defendants move to dismiss entirely any claims against Mr. Murphy and Mr. Frati. Defendants argue that the complaint lacks any allegations that these two individuals had any personal involvement in any wrongdoing.

The motion to dismiss will be granted. Plaintiffs argue that further facts regarding these two Defendants might come out during discovery, but the facts as alleged fail to "raise a reasonable expectation," *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556), that discovery will provide sufficient evidence to properly state a claim.   Turning first to Mr. Murphy, the complaint's sole allegation is that he suggested that Mr. Greco speak with Chief Dessoye about The Mines. This allegation does not involve any wrongdoing *per se*, and it is insufficient to connect him to the alleged conspiracy. Moving to Mr. Frati, the complaint states that he helped convince Representative Pashinski to ignore Mr. Greco's calls and reject the geothermal project. This allegation does not connect Mr. Frati to any of the allegations regarding The Mines, but it would be sufficient to include him in the Count IV claims related to the Development Corporations. However, in what may have been an oversight, the complaint does not assert any claims against Mr. Frati in Count IV. Therefore, the complaint fails to allege the personal involvement of Mr. Murphy or Mr. Frati in any of the claims brought against them. These claims will be dismissed, but Plaintiffs will have leave to amend Count IV to include Mr. Frati.

## B. Count I

The Defendants move to dismiss Count I of the complaint.  Count I claims, pursuant to 42 U.S.C. §§ 1983 and 1985, that all Defendants "act[ed] in concert to subject plaintiffs and their businesses to far harsher law enforcement action than other businesses similarly situated (other than in the race of their clientele) in violation of said plaintiffs' rights to equal protection of the laws under the Fourteenth Amendment to the United States." Compl. ¶ 80.

### 1. Section 1983

Section 1983 states, "Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or any other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n.9 (1999) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

### a. Municipal Liability

The City Defendants move to dismiss the § 1983 claims in Count I (as well as Counts II through V) on the grounds that Plaintiffs failed to establish municipal liability under *Monell*.[1] Local governing bodies are deemed to be "persons" within the meaning of Section

---

[1] The County does not challenge Plaintiffs' claim of municipal liability, but the analysis applies equally to either municipality.

1983 and can be sued directly under the act for monetary, declaratory, or injunctive relief. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).   To establish municipal liability, a plaintiff must: 1) demonstrate the existence of an unlawful policy or custom, and 2) prove that the municipal practice was the proximate cause of the injury. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).   Municipalities cannot be held liable under § 1983 based solely upon a theory of *respondeat superior*; rather, the plaintiff must identify a municipal policy or custom that caused his injury. *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000).   To establish causation, a plaintiff must allege a "plausible nexus" or "affirmative link" between the violation and the municipality's custom or practice. *Bielevicz*, 915 F.2d at 850.   Causation exists where the connection between the policy and injury is so strong that it would be a plainly obvious consequence. *Bd. of County Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 411 (1997).

The City Defendants' motion to dismiss the § 1983 claims against the City will be denied. The City Defendants argue that the complaint fails to demonstrate a plausible nexus or affirmative link between the municipality's policy and the constitutional deprivation at issue, arguing that the City never shut down The Mines.[2] But a total shutdown of the bar is not necessary to establish a plausible nexus between the alleged policy and alleged injury. Plaintiffs allege that the City had a policy to discourage businesses from serving Blacks and Latinos, and an obvious consequence of this policy would be that a business that serves Blacks and Latinos would suffer economic harm. Based on these allegations, Plaintiffs have alleged causation sufficient to state a claim for municipal liability.

### b. Violation of the Equal Protection Clause

The College and County Defendants argue that the Plaintiffs failed to state a claim

---

[2] The City Defendants do not argue that Plaintiffs fail to allege a policy or custom.

for a violation of the Equal Protection Clause.[3] The Equal Protection Clause of the Fourteenth Amendment directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To prevail on an equal protection claim, a plaintiff must present evidence that s/he has been treated differently from persons who are similarly situated." *Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010) (quoting *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003)).

The Mines' equal protection claim will not be dismissed. The County Defendants argue that The Mines cannot claim an equal protection violation because it is a corporation without a racial identity, and thus it does not belong to a class protected by the Equal Protection Clause. The Supreme Court has determined, however, that plaintiffs may proceed with equal protection claims under a "class of one" theory, "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Vill. of Willobrook v. Olech*, 528 U.S. 562, 564 (2000). Here, The Mines alleges that City and County law enforcement officers intentionally treated it differently than similarly situated nightclubs in the area. Although the County Defendants argue that there was a rational basis for any different treatment, that is an issue of fact not appropriate for the motion-to-dismiss stage. Viewing the facts in the complaint in the light most favorable to the Plaintiffs, they have alleged an equal protection violation, and thus The Mines' claims under Count I will not be dismissed on the basis of failure to state a claim.

The Count I claims by Plaintiffs Mr. Greco and Rittenhouse, however, will be dismissed for failure to state a claim. The complaint alleges that The Mines was treated differently than other nightclubs, but does not allege that Mr. Greco or Rittenhouse were

---

[3]  The City Defendants do not claim that Count I fails to state a claim, so the sufficiency of Plaintiffs' claims against them will not be analyzed.

treated differently than similarly situated corporate officers or leaseholders. In fact, the complaint does not allege any action specifically directed at Mr. Greco or Rittenhouse as opposed to The Mines. Because of the longstanding principle that "one cannot sue for the deprivation of another's civil rights," *O'Malley v. Brierley*, 477 F.2d 785, 789 (3d Cir. 1973), the County Defendants' motion to dismiss Mr. Greco's and Rittenhouse's claims in Count I will be granted.

### c. Under Color of State Law

The College Defendants also seek dismissal of Count I on the grounds that they did not act under color of state law. Generally, "[a]ction under color of state law 'requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)). The College Defendants are private parties, and thus were not clothed with the authority of state law. But private citizens who conspire with a state actor are also acting under color of law for the purposes of § 1983. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).  Plaintiffs argue that because the College Defendants acted in concert with the City Defendants, they acted under color of state law.

Plaintiffs' § 1983 claim against the College Defendants must be dismissed because Plaintiffs fail to establish a conspiracy that would transform the Defendants into state actors. In order to state a claim for a conspiracy, a plaintiff must present "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556)). Further, the plaintiff "must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and

the certain actions of the alleged conspirators taken to achieve that purpose." *Id.* at 179 (quoting *Shearin v. E.F. Hutton Grp., Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989), *abrogated on other grounds by Beck v. Prupis*, 529 U.S. 494 (2000)). Here, with the exception of the conclusory statement that the parties "acted in concert," Plaintiffs have only alleged that Father O'Hara met with Mayor Leighton and Chief Dessoye. But one meeting does not create a plausible inference of agreement–and the complaint does not even allege any meeting or communication between the City Defendants and Mr. McGonigle, Mr. McAndrew, or Mr. Lindenmuth. Further, the complaint does not allege any actions in furtherance of the conspiracy on the part of the College Defendants (as the e-mails and statements made by College Defendants all occurred prior to the meeting where the conspiracy allegedly began). Thus, without sufficient facts to plead a conspiracy, the complaint has failed to allege that the College Defendants acted under color of state law. The claims in Count I against the College Defendants will be dismissed.

### 2. Section 1985

42 U.S.C. § 1985 has three subsections: § 1985(1) deals with preventing an officer from performing duties; § 1985(2) addresses obstruction of justice or intimidating a party, witness, or juror; and § 1985(3) focuses on the deprivation of rights or privileges. Plaintiffs' complaint does not identify a particular subsection of § 1985, but I will assume based on the facts that its claim falls under § 1985(3). To state a claim under § 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

*Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997); *see also Griffin v. Breckenridge*, 403 U.S.

88, 102-03 (1971).

The § 1985 claims of Mr. Greco and Rittenhouse and the § 1985 claims against the College Defendants and County Defendants will be dismissed. The reasoning applied in my analysis of the § 1983 claim applies here as well: Mr. Greco and Rittenhouse cannot assert a civil rights claim based on the alleged deprivation of The Mines' equal protection rights, and the complaint does not allege sufficient facts to establish a conspiracy on the part of the College Defendants. As far as the County Defendants, the complaint's sole factual allegation is that Sheriff Savokinas was a part of the law enforcement presence outside of the The Mines on one occasion. The presence of the sheriff alone is insufficient to state a claim for a conspiracy.  Therefore, the College and County Defendants' motion to dismiss the § 1985 claim will be granted.

## C. Count II

All Defendants move to dismiss Count II. In Count II, Mr. Greco and the Entertainment Corporations bring claims pursuant to 42 U.S.C. §§ 1981, 1982, 1983, and 1985, alleging that Defendants acted "in retaliation against plaintiffs for welcoming Black and Latino persons as patrons at their establishment and . . . as part of a custom and policy designed to drive such persons out of Wilkes-Barre and the neighboring communities." Compl. ¶ 2.

### 1. Sections 1981 and 1982

42 U.S.C. §§ 1981 and 1982 were passed as part of the "immediately post-Civil War legislative effort to guarantee the then newly freed slaves the same legal rights that other citizens enjoy." *CBOCS v. Humphries*, 553 U.S. 442, 448 (2008).  Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  Section 1982 provides,

among other things, that "[a]ll citizens of the United States shall have the same right . . . as is enjoyed by white citizens . . . to inherit, purchase, lease, sell, hold, and convey real and personal property." Both statutes are construed similarly based on their "common language, origin, and purposes." *Humphries*, 553 U.S. at 448.   Defendants initially argue that the statutes are both inapplicable to this case because the actions allegedly taken by the Defendants are not related to the making or enforcement of contracts or to the purchase or sale of real and personal property. Plaintiffs allege, however, that the police harassment deterred individuals from patronizing The Mines and thus entering into contracts for the sale of goods and services such as beverages and entertainment. Purchases of goods implicate "the purchase of . . . personal property" under § 1982, *see Calderon v. Sw. Bell Mobile Sys., LLC*, No. 02 C 9134, 2004 WL 2931321, at *3 (N.D. Ill. Dec. 13, 2004) (cellphones), and they also constitute contracts for the purposes of § 1981, *see, e.g.*, *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 874 (6th Cir. 2001) (toys). Thus, both statutes are applicable to the instant case.

Plaintiffs' claim in Count II is for retaliation pursuant to §§ 1981 and 1982.  The Supreme Court determined in *Humphries* that both §§ 1981 and 1982 encompass "the claim of an individual (black or white) who suffers retaliation because he has tried to help a different individual, suffering direct racial discrimination, secure his § 1981 [or § 1982] rights.'" 553 U.S. 442, 445 (2008). The Third Circuit has not yet addressed the elements of a § 1982 claim, and has only examined § 1981 retaliation claims within the context of employment. The Second Circuit, however, has held that "[t]o establish retaliation [under § 1981], plaintiffs must show that the plaintiffs were (1) engaged in an activity protected under the anti-discrimination statutes, (2) the defendants were aware of plaintiff's participation in the protected activity, (3) the defendants took adverse action against

plaintiffs based upon their activity, and (4) a causal connection existed between the plaintiffs' protected activity and the adverse action taken by defendants." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 105 (2d Cir. 2001).  Because the statutes are construed similarly, this test should be applied to § 1982 as well.

Mr. Greco and The Mines have properly stated a retaliation claim under 42 U.S.C. §§ 1981 and 1982 against Mayor Leighton, Chief Dessoye, and the City of Wilkes-Barre. The complaint alleges that The Mines engaged in the protected activity of entering into contracts and sales of personal property to minorities, and Mr. Greco engaged in the protected activity of complaining about civil rights violations and threatening to file a lawsuit against the two Defendants for allegedly interfering with black and Latino individuals' right to purchase goods and services from The Mines. The complaint also alleges that Defendants were aware of the protected activity and instigated the police harassment of nightclub patrons in response to the protected activity and as part of a city policy. Thus, all elements of a prima facie § 1981 retaliation case are satisfied. Defendants argue that Mr. Greco and The Mines did not really engage in protected activity because they were motivated by self-interest in attracting customers. But there is no requirement that a plaintiff asserting a retaliation claim must have engaged in protected activity with a strictly altruistic motive. To the contrary, the *Humphries* Court based its holding on *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969), where the Supreme Court determined that a white landlord had standing to bring a § 1982 claim against a corporation that discriminated against his black tenant. The landlord had attempted to assign shares of the corporation to his tenant, but the corporation refused to approve the assignment based on the tenant's race, and then expelled the landlord when he protested. *Id.* Like Mr. Greco and The Mines in this case have a financial interest in attracting black and Latino customers, the landlord in *Sullivan*

had a financial interest in maintaining his lease with the black tenant. Financial self-interest did not preclude the landlord from asserting his claim, nor does it preclude Plaintiffs from asserting theirs.

Rittenhouse, however, has failed to state a § 1981 or § 1982 retaliation claim. The complaint does not allege any protected activity on the part of Rittenhouse, as investing in a corporation that serves minorities is not a protected interest under either statute. Rittenhouse's claims will thus be dismissed.

Further, Plaintiffs have failed to state a § 1981 or § 1982 retaliation claim against the County or College Defendants, or the City Council members. The complaint does not allege that Plaintiffs complained to or threatened to sue any of these Defendants, nor does it allege that these Defendants knew that the Plaintiffs had spoken out against the alleged discriminatory actions. Without knowledge of protected activity and then adverse action in response, there is no retaliation claim under the statutes. Therefore, the claim against these Defendants will be dismissed.

### 2. Section 1983

Plaintiffs' retaliation claim under § 1983 will be dismissed for failure to state a claim. "In general, constitutional retaliation claims are analyzed under a three-part test. Plaintiff must prove (1) that he engaged in constitutionally protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 282 (3d Cir. 2004). It is unclear what specific constitutionally protected activity is alleged in this § 1983 claim as opposed to the § 1981 and § 1982 claims already addressed. Because Count II states that Defendants retaliated against Plaintiffs "for welcoming Black and Latino persons as patrons at their establishment," the § 1983 claim will be construed as involving retaliation based on

Plaintiffs' exercise of their freedom of association under the First Amendment. Freedom of association claims may involve protected relationships or expressive association, *see Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153, 173 (3d Cir. 2008), but Plaintiffs fail to sufficiently allege either.

First, the relationship between a nightclub and its patrons is not a protected association. The Supreme Court has held that the First Amendment protects certain relationships, including "marriage, the begetting and bearing of children, child rearing and education, and cohabitation with relatives." *Bd. of Dirs. of Rotary Int'l v. Rotary Club*, 481 U.S. 537, 545 (1987). Protection is extended to relationships that involve "not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619-20 (1984). In *Borden v. School District of the Township of East Brunswick*, the Third Circuit held that a football coach did not have a free association claim against a school district that prohibited him from saying prayers with his team. The *Borden* court noted that the relationship between a football coach and his players was not close enough to implicate freedom of association protections. Because a relationship between a nightclub and its patrons is less close and personal than that of a football coach and his players, there cannot be a protected association here. S*ee Desi's Pizza, Inc. v. City of Wilkes-Barre*, No. Civ. A. 3:CV-01-0480, 2006 WL 2460881, at *26 (M.D. Pa. Aug. 23, 2006) (rejecting First Amendment retaliation claim because relationship between bar and customers "is not an association based on intimate human relationships"). Thus, Plaintiffs cannot assert a retaliation claim based on that relationship.

Second, Plaintiffs fail to state a claim for retaliation based on expressive association. Expressive association claims involve groups that "engage in some form of expression,

whether it be public or private." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). The Third Circuit has held that there is no expressive association between a tavern owner and his clientele. *Smith v. City of Lebanon*, No. 09-4647, 2010 WL 2813279, at *2, 387 Fed. App'x 186, 188 (3d Cir. Jul. 19, 2010); *see also Desi's Pizza*, 2006 WL 2460881 at *26 (rejecting First Amendment retaliation claim because relationship between bar and customers was "purely a commercial transaction . . . not formed to engage in any protected First Amendment activities"). Therefore, Plaintiffs cannot assert an expressive association retaliation claim. Defendants' motion to dismiss the § 1983 retaliation claims in Count II will be dismissed.

### 3. Section 1985

Plaintiffs' § 1985 claims in Count II[4] will be dealt with in a similar fashion as those asserted in Count I: the claims by Rittenhouse will be dismissed and the claims against the County and College Defendants will be dismissed.[5] As noted above, no facts demonstrate that Rittenhouse engaged in any protected activity, and it cannot file suit based on the deprivations of Mr. Greco and The Mines. Further, there are insufficient facts to demonstrate a conspiracy on the part of the College or County Amendments. Thus, those Defendants' motion to dismiss the § 1985 claims in Count II will be granted.

### D. Count III

All Defendants move to dismiss Count III of the Plaintiffs' complaint. Count III alleges violations of the Due Process Clause of the Fifth and Fourteenth Amendment of the United States Constitution, based on the Defendants' alleged abuse of police power to destroy

---

[4] As with the § 1985 claim in Count I, it will be assumed that Plaintiffs' claim in Count II is under 42 U.S.C. § 1985(3).

[5] The City Defendants did not address Count II's § 1985 claims in their motion to dismiss, so those claims will stand.

Plaintiffs' business, harassment and stigmatization of Plaintiffs, and deprivation of Plaintiffs' right to use property and pursue an occupation.

As an initial matter, the College Defendants' motion to dismiss Count III must be granted. Count III is based on the alleged abuse of police power, and as I held above, there are insufficient facts linking the College Defendants to a conspiracy involving police harassment. Thus, Plaintiffs' due process claim against the College Defendants will be dismissed.

### 1. Fifth Amendment

Plaintiffs' claim under the Fifth Amendment will be dismissed. The Due Process Clause of the Fifth Amendment applies to actions of the federal government, while the Due Process Clause of the Fourteenth Amendment applies to state actors. *See* U.S. Const. amend. V; U.S. Const. amend. XIV, § 1; *see also B&G Const. Co., Inc. v. Dir. Office of Workers' Comp. Programs*, 662 F.3d 233, 246 n.14 (3d Cir. 2011). Because Plaintiffs do not allege any actions on the part of the federal government, they cannot assert claims under the Fifth Amendment.

### 2. Fourteenth Amendment

Count III's claim under the Due Process Clause of the Fourteenth Amendment will not be dismissed. The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property without due process of the law." U.S. Const. amend. XIV. Due process under the Fourteenth Amendment "has both substantive and procedural components." *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 658 (3d Cir. 2011). Although the complaint is unclear as to the nature of the claim, Plaintiffs' briefs indicate that Count III is a substantive due process claim. The substantive component of the Due Process clause "bars certain arbitrary, wrongful government actions 'regardless of

the fairness of the procedures used to implement them.'" *Newman v. Beard*, 617 F.3d 775, 782 (3d Cir. 2010) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). To establish a substantive due process violation, a plaintiff must prove: (1) the deprivation of an interest protected by the substantive due process clause; and (2) that the government's deprivation of that protected interest shocks the conscience. *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 190 (3d Cir. 2009) (citing *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)). Defendants argue that Plaintiffs have failed to establish either.

### a. Deprivation of a Protected Interest

Plaintiffs have established the deprivation of a protected right. Ownership and use of real property is an interest protected by substantive due process. *DeBlasio v. Zoning Bd. of Adjustment for Twp. of West Amwell*, 53 F.3d 592, 601 (3d Cir. 1995), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392 (3d Cir. 2003). Here, Plaintiffs assert that they were deprived of a property right by virtue of not being able to realize the benefit of their $900,000 investment in the property owned by Mr. Greco. Defendants argue that there was no deprivation because neither the City nor the County actually shut down The Mines. But Plaintiffs allege that the Defendants' harassment made it financially impossible for them to operate the nightclub more than sporadically. This allegation sufficiently states a claim that Plaintiffs were deprived of their right to use and enjoy their property. Further, the complaint states that Mr. Greco was deprived of his liberty right in pursuing his occupation. Although the Third Circuit Court of Appeals has not dealt with a similar case, other courts of appeals have held that government harassment that prevents a bar owner from operating his business creates a proper substantive due process claim. *See, e.g.*, *Benigni v. City of Hemet*, 879 F.2d 473, 479 (9th Cir. 1988). Therefore, Plaintiffs' complaint properly states a claim for a deprivation of a protected interest.

### b. Conscience Shocking

Plaintiffs have also successfully alleged a deprivation that is shocking to the conscience. The standard of what is conscience shocking is subjective and depends on context, but "it is governmental conduct intended to injure that is most likely to rise to the conscience-shocking level." *Evans v. Sec'y of Pa. Dep't of Corr.*, 645 F.3d 650, 660 (3d Cir. 2011) (internal quotations omitted) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)). "[A]llegations of corruption, self-dealing, [or] bias against an ethnic group" suggest conscience-shocking behavior. *Chainey*, 523 F.3d at 220 (3d Cir. 2008). Plaintiffs allege that the City and County purposely targeted The Mines for harassment because of the race of the patrons. If this allegation of intentionally injurious conduct motivated by racial bias were true, it would shock the conscience. Therefore, Plaintiffs have stated a claim for a substantive due process violation, and the City and County Defendants' motion to dismiss will be denied.

## E. Count IV

The City Defendants move to dismiss Count IV of the complaint. In Count IV, Mr. Greco and the Development Corporations allege pursuant to § 1983 that the City, Mayor Leighton, and the City Council members (Mr. Thomas, Jr., Mr. Barrett, Ms. Kane, Mr. Cronauer, and Mr. Merritt) violated their constitutional rights. Specifically, the complaint alleges that by preventing the KOZ development project, these Defendants violated the Plaintiffs' rights to equal protection and substantive due process under the Fifth and Fourteenth Amendments.

### 1. Fifth Amendment

Plaintiffs' claim under the Fifth Amendment will be dismissed. As noted above, there is no federal action in this case, and thus the Fifth Amendment is inapplicable.

### 2. Fourteenth Amendment

The City Defendants argue that the Fourteenth Amendment claim in Count IV must be dismissed for two reasons. First, they argue that they are immune from suit based on the doctrine of legislative immunity. Alternatively, they argue that the complaint fails to state a proper claim for an equal protection or substantive due process violation.

### a. Legislative Immunity

Local legislators are absolutely immune from suit in their individual capacities under § 1983 for "all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). Legislative immunity applies to acts within the "legislative sphere" even where the conduct, "if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." *Doe v. McMillan*, 412 U.S. 306, 312-13 (1973). This immunity is based on the Speech or Debate Clause of the United States Constitution. *Id.* at 49 (quoting *Tenney*, 341 U.S. at 372-75); *see also* U.S. Const. Art. I, § 6, cl. 1.

An act is legislative, and thus covered by absolute immunity, if it is "both substantively and procedurally legislative in nature." *In re Montgomery Cnty.*, 215 F.3d 367, 376 (3d Cir. 2000) (citing *Carver v. Foerster*, 102 F.3d 96, 100 (3d Cir. 1996)). "An act is substantively legislative if it involves 'policy-making of a general purpose' or 'line-drawing'" and "[i]t is procedurally legislative if it is undertaken 'by means of established legislative procedures.'" *Id*. The motive or intent of an individual performing an act is irrelevant to whether it is legislative. *Bogan*, 523 U.S. at 55. The Third Circuit Court of Appeals "has repeatedly stated that decisions affecting a single individual or a small number of people do not implicate legislative power and, thus, such actions are administrative in nature,

whereas decisions affecting the community at large are likely legislative." *Fowler-Nash v. Democratic Caucus of Pa. House of Representatives*, 469 F.3d 328, 338 (3d Cir. 2006).

Because the actions alleged in Plaintiffs' complaint were administrative and not legislative, Defendants do not have immunity from suit.[6] Plaintiffs' complaint alleges that Mayor Leighton and the City Council members specifically and intentionally denied them an extension that was granted to other properties. The City Defendants claim that their decision was "a policy decision regarding tax collections for the City," but the denial of a benefit to a specific individual or group is not "a policy-making decision of a general scope," *id.* at 338 n.2. The City Defendants do not claim that other properties were also denied the extension, nor do they identify a neutral, general policy that dictated the decision to deny the extension. Therefore, Defendants fail to demonstrate that their actions were legislative and thus protected by absolute immunity.

### a. Equal Protection

Although Defendants are not immune from suit, Plaintiffs have failed to state a claim for an equal protection violation. As noted above, "[t]o prevail on an equal protection claim, a plaintiff must present evidence that s/he has been treated differently from persons who are similarly situated." *Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010) (quoting *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003)). Here, Plaintiffs argue that other properties were granted the extension necessary to receive the KOZ benefits. But, as the City Defendants point out, their alleged obstruction of the KOZ benefits occurred after they learned of Mr. Greco's felony charges. Plaintiffs have not argued that the other properties who received the extension also were owned and operated by individuals facing felony

---

[6] It should further be noted that even if the actions were legislative in nature, the City could not assert legislative immunity. "[U]nlike various government officials, municipalities do not enjoy immunity from suit–either absolute or qualified–under § 1983." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993).

charges. Thus, the other properties are not similarly situated to the Plaintiffs. Because Plaintiffs have failed to state a claim that they were treated differently from similarly situated individuals, Defendants' motion to dismiss the equal protection claim in Count IV will be granted.

### b. Substantive Due Process

Plaintiffs have, however, successfully stated a claim for a substantive due process violation. The City Defendants argue that this claim must be dismissed because it fails to establish that any of the Defendants' actions were shocking to the conscience. But like the Plaintiffs' other substantive due process claim, the claim in Count IV alleges that the Defendants deprived Plaintiffs of a right in order to retaliate against them for serving patrons of color and making civil rights complaints. If these allegations were true, this corrupt and racially biased conduct would shock the conscience. Therefore, the City Defendants' motion to dismiss will be denied.

### F. Count V

All Defendants move to dismiss Count V. In Count V, Plaintiffs bring three state tort claims against the Defendants: tortious interference with business relationships, trade disparagement, and defamation.[7] Defendants' motions to dismiss raise three issues: immunity, the statute of limitations, and failure to state a claim.

### 1. Immunity

Count V will be dismissed against the City and the County because they are immune

---

[7] The Defendants' briefs indicate that they interpret Count V as also asserting a claim for the tort of abuse of process. But the complaint does not list "abuse of process" after the colon in Count V signaling the beginning of the list of state law claims. Compl. ¶ 88 ("Plaintiffs state the following state law claims against all defendants acting in concert for abuse of process: tortuous [sic] interference with business relationships, trade disparagement, defamation.") Further, the Plaintiffs do not mention the tort of abuse of process in any of their briefs. Therefore, the complaint will not be construed as containing a claim for abuse of process.

from suit under the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"), 42 Pa. Cons. Stat. Ann. § 8541 *et seq*. The PPSTCA makes local agencies immune from state law tort claims (with a few exceptions not applicable here).[8] 42 Pa. Cons. Stat. Ann. §§ 8541-42. The City of Wilkes-Barre and Luzerne County both qualify as local agencies under the PPSTCA. *See id.* § 8501. Therefore, they have immunity under the statute.

The individual City and County employees, however, are not protected by immunity. The PPSTCA grants municipal employees the same immunity as agencies, *id.* § 8545, except that employees may be liable for their conduct if it amounted to "actual malice" or "willful misconduct," *id.* § 8550. The Pennsylvania Supreme Court has generally held that "the term 'willful misconduct' is synonymous with the term 'intentional tort.'" *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (quoting *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994)). Here, Count V alleges intentional torts on the part of the employees, and this constitutes willful misconduct under the PPSTCA. Therefore, the City and County employees are not immune from suit.

### 2. Statute of Limitations

Plaintiffs' claims for trade disparagement and defamation must be dismissed because the statute of limitations has lapsed. Pennsylvania tort claims for trade disparagement and defamation are governed by a one-year statute of limitations under 42 Pa. Cons. Stat. Ann. § 5523. *See Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 246 (Pa. 2002); *Spain v. Vicente*, 315 Pa. Super. 135, 142, 461 A.2d 833,

---

[8] The PPSTCA's exceptions allow liability against agencies for: (1) the operation of a motor vehicle in the possession or control of a local agency; (2) the care, custody or control of personal property in the possession or control of a local agency; (3) the care, custody or control of real property; (4) a dangerous condition created by trees, traffic controls, or street lights; (5) a dangerous condition of utility service facilities; (6) a dangerous condition of streets; (7) a dangerous condition of sidewalks; (8) the care, custody or control of animals in possession or control of a local agency. 42 Pa. Cons. Stat. Ann. § 8542.

837 (1983).  Plaintiffs filed their complaint in April 2011.  However, the allegations in the complaint refer back to 2009, thus exceeding the one-year statute of limitations.  Therefore, Defendants' motions to dismiss the claims for defamation and trade disparagement will be granted.

### 3. Failure to State a Claim

As to the remaining state tort claim of interference with a business relationship, Plaintiffs have properly pleaded the claim against some, but not all, Defendants. To state a claim for the tort of interference with a business relationship, a plaintiff must allege the following: "(1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and, (4) the occasioning of actual damage resulting from the defendants conduct."  *Vintage Homes, Inc. v. Levin*, 554 A.2d 989, 994 (Pa. Super. Ct. 1989). Although courts are hesitant to define "prospective contractual relation," a plaintiff must demonstrate "reasonable likelihood or probability [of a contractual relation] . . . something more than a mere hope or innate optimism." *InfoSAGE, Inc. v. Mellon Ventures, L.P.*, 896 A.2d 616, 627 (Pa. Super. Ct. 2006) (quoting *Glenn v. Point Park Coll.*, 272 A.2d 895, 898-99 (Pa. 1971)). Defendants argue that Plaintiffs have failed to prove a prospective contract, but because Plaintiffs allege that they had a prospective contractual relationship with customers at The Mines who might have purchased food or drinks, they have successfully pleaded the first element of the claim. Defendants also argue that Plaintiffs have not demonstrated the second element of intent to harm the plaintiff by preventing the relation. As noted above, the complaint alleges that the City Defendants engaged in a conspiracy to interfere with the nightclub's business, but fails to state sufficient facts to include Sheriff Savokinas or any of the College Defendants in the conspiracy. However, the

28

complaint also alleges that the individual College Defendants took various actions against the nightclub on their own: Mr. McGonigle and Mr. McAndrews circulated an e-mail discussing problems with The Mines and started a forum for discussions on filing complaints against the nightclub, Mr. Lindenumuth spread falsehoods about the nightclub, and Father O'Hara met with City officials to discuss shutting down the nightclub. The allegations against the City Defendants and the College Defendants all satisfy the second element of showing intent to harm by interfering with a contractual relation. Therefore, the tortious interference with a business relationship claim will be dismissed as to Sheriff Savokinas and King's College, but not the individual City and College Defendants.

## G. Count VI

Count VI's claim under the Pennsylvania Fair Educational Opportunities Act, 24 Pa. Cons. Stat. § 5004, will be dismissed. Plaintiffs concurred in the College Defendants' motion to dismiss the claim.

## H. Count VII

Mayor Leighton and Chief Dessoye move to dismiss Count VII of the complaint. In Count VII, Mr. Greco alleges a violation of his Fifth and Fourth Amendment rights pursuant to 42 U.S.C. §§ 1981, 1982, 1983, and 1985.

The City Defendants argue that the claims in Count VII are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that if the success of a plaintiff's § 1983 damages suit "would necessarily imply the invalidity of his conviction or sentence," the plaintiff may only bring the claim where the conviction or sentence has been reversed, expunged, or invalidated in some form. 512 U.S. 477, 484 (1994). In Count VII here, Mr. Greco argues that in order to retaliate against him for speaking out about his civil rights, Mayor Leighton and Chief Dessoye induced an FBI agent "to manipulate Mr. Greco

into becoming vulnerable to the charge of misprision." Compl. ¶¶ 92-93. According to the City Defendants, if Mr. Greco succeeded on this claim, it would necessarily imply that his misprision conviction was invalid. Because Mr. Greco's conviction has not been reversed or otherwise invalidated, the City Defendants argue he cannot bring his claims.

Because Mr. Greco's conviction will not be invalidated by success in his civil rights claims, the City Defendant's motion to dismiss will be denied. Mr. Greco does not claim that his conviction for misprision was invalid–he in fact pled guilty to the charge. Instead, Mr. Greco clarifies that his claim is based on a theory of selective prosecution. The Third Circuit Court of Appeals has noted that "selective prosecution may constitute illegal discrimination even if the prosecution is otherwise warranted." *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 425 (3d Cir. 2003) (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985); *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989); *United States v. Berrigan*, 482 F.2d 171, 174 (3d Cir. 1973)). Thus, Mr. Greco is not *Heck*-barred from proceeding on the theory that he was validly convicted for misprision, but the Defendants conspired to target him for prosecution as a form of retaliation.

## I. Count VIII

The City and College Defendants' motions to dismiss Count VIII of the complaint will be granted. Count VIII is a claim for attorneys fees pursuant to 42 U.S.C. § 1988. However, § 1988 is not itself a cause of action; rather, it is "intended to complement the various acts which do create federal causes of action for the violation of federal rights" by setting regulations as to choice of laws, attorneys fees, and experts fees in a federal civil rights suit. *Moor v. Alameda Cnty.*, 411 U.S. 693, 702 (1973). Because a plaintiff may not sue directly under § 1988, Plaintiffs' claim under the statute is dismissed. Nevertheless, Plaintiffs may

still seek attorneys fees–and their request for that relief is asserted elsewhere in the complaint.

## J. Punitive Damages

The City Defendants' motion to dismiss any punitive damages claims will be denied. Under § 1983, a jury may assess punitive damages "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).   In the context of punitive damages in civil rights cases, the term "'reckless indifference' refer[s] not to the egregiousness of the [defendant's] conduct, but rather to the [defendant's] knowledge that it may be acting in violation of federal law." *Alexander v. Riga*, 208 F.3d 419, 430 (3d Cir. 2000) (quoting *Kolstad v. Amer. Dental Ass'n*, 572 U.S. 526, 535 (1999)). Here, the complaint alleges that Defendants acted out of a desire to discourage minorities from patronizing local businesses and to punish Plaintiffs for welcoming minorities. Taken as true, these allegations demonstrate an evil motive and likely reckless indifference as well. Therefore, Plaintiffs may properly seek punitive damages.

## K. Supplemental Jurisdiction

The College Defendants argue that because all federal claims against them will be dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining state law tort claims against them. Where a plaintiff brings both federal and state law claims that are related to one another and arise out of a common nucleus of operative fact, a district court has supplemental jurisdiction over the state claims. 28 U.S.C. § 1367(a); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). If a district court dismisses all the federal claims, it may decline to exercise supplemental jurisdiction over the remaining state law claims. § 1367(c)(3). Generally, where all federal claims have been dismissed, a district

court should "decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

The College Defendants' motion to dismiss for lack of supplemental jurisdiction will be denied. There are still viable federal claims against other Defendants in the case that create original jurisdiction, and the state law tort claims against the College Defendants are related to the federal claims and arise out of the same set of facts. Thus, the Court has supplemental jurisdiction under § 1367(a).

**L. Leave to Amend**

Plaintiffs will be granted leave to amend several of their claims in order to make more specific allegations. *See Darr v. Wolfe*, 767 F.2d 79, 81 (3d Cir. 1995) ("[W]hen an individual has filed a complaint under § 1983 which is dismissable for lack of factual specificity, he should be given a reasonable opportunity to cure the defect, if he can."). In particular, Plaintiffs can cure the deficiencies in their complaint by amending: the allegations regarding the personal involvement of Mr. Murphy and Mr. Frati; the allegations regarding the County and College Defendants' involvement in the alleged conspiracy; the allegations regarding Count I's §§ 1983 and 1985 claims by Mr. Greco and Rittenhouse; allegations regarding Rittenhouse's §§ 1985 claims in Count II; and allegations regarding Count II's §§ 1981 and 1982 claims against the City Council members.

## IV. Conclusion

For the reasons stated above, the Defendants' motions to dismiss will be granted in part and denied in part. Plaintiffs will be granted leave to amend their complaint. An appropriate order follows.

 March 16, 2012                                            /s/ A. Richard Caputo
Date                                                       A. Richard Caputo
                                                           United States District Judge